UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:**
**08-21648-CIV-MORENO**

WALL STREET MORTGAGE BANKERS, LTD.
d/b/a POWER EXPRESS,

    Plaintiff,

vs.

ATTORNEYS TITLE INSURANCE FUND, INC.,
AND NATIONAL TITLE SERVICES, INC.,

    Defendants.
_____/

**ORDER DENYING IN PART MOTION TO DISMISS**

THIS CAUSE came before the Court upon Defendant National Title Services, Inc.'s ("NTS") Motion to Dismiss the Amended Complaint **(D.E. No. 24)**, filed on **October 21, 2008**.

THE COURT has considered the motion, response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED in part and DENIED in part. Plaintiff's conversion claim is DISMISSED. NTS's motion to dismiss is DENIED as to Plaintiff's remaining claims.

**I. BACKGROUND**

Adriana Diaz bought an apartment located at 1331 Brickell Bay Drive, unit 3605, Miami, Florida, 33131 ("the property") owned by Codan LLC on or about January 2007. Neither is a party to this suit, however. Plaintiff Wall Street Mortgage Bankers, Ltd. is a New York based mortgage lender who provided two loans totaling $1,840,000 to Diaz in exchange for promissory

notes and two mortgages on the property. NTS acted as the closing agent and the insuring agent for co-Defendant Attorney Title Insurance Fund, Inc. ("ATI") in this real estate transaction. ATI issued a title insurance policy to Diaz, insuring that title on the property passed to her. On January 17, 2007, ATI issued a closing protection letter to Plaintiff whereby ATI agreed to reimburse Plaintiff for any actual loss incurred by Plaintiff in connection with its insuring agent's (NTS) mishandling of the closing. Plaintiff alleges that in reliance on these facts, it transferred $1,840,000 to NTS specifically earmarked to fund the deal. In return, Plaintiff received two mortgages and two promissory notes to cover the full amount of the loan. As the insuring agent for ATI, NTS was in charge of assuring that all documents passed from seller to buyer, including the deed and a fully executed HUD-1 settlement statement.

After these exchanges, Plaintiff sold the initial promissory note worth $1,725,000 and assigned the first mortgage to Thornburg Mortgage Home Loans, Inc. ("Thornburg"). Plaintiff filed suit after NTS allegedly failed to record a deed showing that title passed from Codan LLC to Diaz, and failed to provide Plaintiff with a properly executed HUD-1 settlement statement. This alleged title defect prompted Thornburg to approach Plaintiff and demand that Plaintiff repurchase the $1,725,000 promissory note. Plaintiff, in turn, points the finger at NTS and ATI in this suit, alleging (1) breach of fiduciary duty, negligence and conversion against NTS, and (2) breach of contract, declaratory relief, and indemnification against ATI. Before the Court is NTS's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(7).

## II. DISCUSSION

NTS cites to Rules 12(b)(6) and 12(b)(7) as alternative legal bases for this Court to dismiss Plaintiff's amended complaint. First, Defendant argues that Florida's economic loss rule

bars Plaintiff's tort claims against NTS in Counts I-III. Additionally, NTS contends that Plaintiff fails to state claims for breach of fiduciary duty and conversion.[1] Second, NTS argues that the Court should dismiss Plaintiff's claims pursuant to Rule 12(b)(7) because Plaintiff failed to join NTS's court-appointed receiver as a party to this suit. For the reasons stated below, the Court grants NTS's motion to dismiss only as to Plaintiff's conversion claim.

### A. Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)

Faced with a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff. *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). Plaintiff's complaint must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). A complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

### I. Plaintiff's Tort Claims are Not Barred by Florida's Economic Loss Rule

Florida's "contractual privity economic loss rule" bars a tort claim when it is based on the same conduct that underlies a breach of contract claim. *Indemnity Ins. Co. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). An aggrieved party cannot "circumvent[] the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* That said, the presence of an underlying contract does not automatically bar tort claims stemming from the related conduct. *See Maliner v. Wachovia Bank, N.A.*, No. 04-60237-CIV-ALTONAGA, 2005 WL 670293, at *7 (S.D. Fla. Mar. 1, 2005) (citing *Indemnity Ins.*, 891 So. 2d at 537). Plaintiff

---

[1] As to Plaintiff's negligence claim, NTS argues only that the economic loss rule should bar this claim from proceeding against it.

must allege "acts independent from the acts that breached the contract" in order to sustain its tort action above and beyond a breach of contract claim. *Indemnity Ins.*, at 537.

In *Maliner*, the court found that Plaintiff's common law negligence and breach of fiduciary duty claims could proceed in the face of the economic loss rule. 2005 WL 670293, at *9. Contrary to NTS's argument that professionals are the only individuals subject to the general bar of tort claims by the economic loss rule, Judge Altonaga found that Plaintiff's common law negligence claim survived summary judgment. *Id.* In regards to a breach of fiduciary claim, the Court in *Maliner* stated that this tort "is one of those well-established torts which remains viable, even if there is an underlying oral or written contract." *Id.* at 8 (citing *Invo Fla., Inc. v. Somerset Venturer, Inc.*, 751 So.2d 1263, 1267 (Fla. 3d DCA 2000).

Plaintiff alleges that NTS was the insuring agent for ATI, who in turn issued a title insurance policy to Diaz. The contract appears to have been between ATI and Diaz, as alleged in Plaintiff's breach of contract claim against ATI, as opposed to NTS.[2] Plaintiff's breach of contract claim against ATI is based on the discovery that Diaz did not possess good title to the property. Separately, Plaintiff alleges that NTS is liable for breach of fiduciary duty, negligence, and conversion based on its actions (or inaction) that resulted in the defective title. NTS allegedly failed to properly record the deed to the property and failed to provide Plaintiff a properly executed HUD-1 Settlement Statement before disbursing the closing funds.

Despite NTS's urging, it would be premature and imprudent for the Court to conclude that Plaintiff's tort claims against NTS merely amount to breach of contract claims. *See Crowell v. Morgan Stanley Dean Witter Services, Co.*, 87 F. Supp.2d 1287, 1293 (S.D. Fla. 2000) (finding, at

---

[2] The Court notes that neither party filed a copy of the relevant contractual provisions at issue in this case.

the pleading stage, that the economic loss rule did not bar Plaintiff's common law tort claims); *See also Stateline Power Corp. v. Kremer*, 404 F. Supp.2d 1373, 1380 (S.D. Fla. 2005) (denying motion to dismiss breach of fiduciary duty claim where Defendant sought to invoke the economic loss rule). Without the applicable contract in hand, and being limited to the allegations of NTS's conduct set forth in the complaint, the Court finds that Plaintiff's tort claims are not barred by the economic loss rule.

### ii. Plaintiff States a Claim for Breach of Fiduciary Duty

In order to state a claim for breach of fiduciary duty under Florida law, Plaintiff must show: (1) the existence of such duty; (2) defendant's breach of this duty; and (3) damages proximately caused by defendant's breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). A fiduciary duty exists when there is a "relation of trust and confidence [] between the parties." *Id.* at 352. Plaintiff alleges that NTS owed a fiduciary duty to Plaintiff as the title agent. The Court accepts this allegation as true, and notes that despite Defendant's contrary argument, courts have interpreted Florida law to allow for the creation of a fiduciary relationship between a title insurance company acting as a closing agent or escrow agent and the buyer and seller. *See e.g. Askew v. AllState Title & Abstract Co., Inc.*, 603 So.2d 29, 31 (Fla. 2d DCA 1992) (finding that a title agent acting as a closing agent "has a fiduciary duty to both the buyer and the seller"); *Crowell*, 87 F. Supp.2d at 1293 (noting that an escrow agent has a fiduciary duty pursuant to the escrow agreement). In that capacity, NTS allegedly breached its duty when it disbursed Plaintiff's money that it had held in escrow without first obtaining a deed or HUD-1 Settlement Statement. As a result of this alleged breach, Plaintiff contends that it was damaged. These allegations state a claim for breach of fiduciary duty.

### iii. Plaintiff Fails to State a Conversion Claim

The tort of conversion occurs when the defendant wrongfully takes possession of another's personal property with the intent to permanently deprive the original owner of possession. *Brand v. Old Republic Title Ins. Co.*, 797 So. 2d 643, 646 (Fla. 3d DCA 2001). The Court looks no further than Plaintiff's failure to allege NTS's intent to permanently deprive Plaintiff of possession of any identifiable funds. Plaintiff's deficient pleading demands the dismissal of this claim.[3]

### B. NTS's Rule 12(b)(7) Motion

The failure to join a party pursuant to Fed. R. Civ. P. 19 is grounds for dismissal under Rule 12(b)(7). Before dismissing Plaintiff's claims based on this procedural ground, the Court must apply the factors set forth in Rule 19. *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982). The moving party has the burden to show that the person or entity is indispensable to the litigation such that the Court must dismiss the complaint. *Ship Const. & Funding Servs., Inc. v. Star Cruises PLC*, 174 F. Supp.2d 1320, 1325 (S.D. Fla. 2001). And in deciding whether to dismiss Plaintiff's suit, the Court must base its ruling on "pragmatic concerns" for the parties. *Challenge Homes*, 669 F.2d at 669.

Here, NTS argues that the appointed Receiver, Lawrence A. Saicheck, was never made a party in this case, therefore requiring dismissal of Plaintiff's complaint. The Court disagrees. The mere fact that a state court appointed a Receiver for NTS for the purpose of possessing and preserving all pertinent NTS files and records does not mean that this individual becomes an

---

[3] The Court also notes, and rejects, NTS's final argument under Rule 12(b)(6) that Plaintiff's request for attorney's fees was improperly pled. As Plaintiff correctly responds, it need only put NTS on notice that it will seek attorney's fees down the road. *Caufield v. Cantele*, 837 So.2d 371, 377-78 (Fla. 2002).

indispensable party to this litigation.  Indeed, the Court's "pragmatic concerns" for the parties in this litigation do not warrant dismissal.  *Id.*

### III. CONCLUSION

For the foregoing reasons, NTS's motion to dismiss is granted only as to Plaintiff's conversion claim.  At this stage, the Court is unwilling to dismiss Plaintiff's tort claims based on Florida's economic loss rule.  NTS's motion to dismiss Plaintiff's negligence and breach of fiduciary duty claims is denied.  Finally, NTS's motion to dismiss based on Plaintiff's failure to join the appointed receiver is likewise denied.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of December, 2008.

```
                                    _____
                                    FEDERICO A. MORENO
                                    UNITED STATES DISTRICT JUDGE
```

Copies provided to:

Counsel of Record